People of State of Illinois, Defendant in Error, v. Kenneth Beason, Plaintiff in Error.

Gen. No. 45,283.

Opinion filed March 7, 1951. Released for publication April 6, 1951.

EUGENE WOOD and GEORGE M. CRANE, both of Chicago, for plaintiff in error; GEORGE M. CRANE, of Chicago, of counsel.

JOHN S. BOYLE, State's Attorney, for defendant in error; JOHN T. GALLAGHER, RUDOLPH L. JANEGA, AR-

THUR F. MANNING and ELMER C. KISSANE, Assistant State's Attorneys, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

Plaintiff in error, Kenneth Beason, hereinafter called defendant, was tried in the criminal court of Cook county by the court without a jury on an indictment charging that he unlawfully carried and concealed on or about his person a pistol, in violation of paragraph 155 of chapter 38, Illinois Revised Statutes 1947 [Jones Ill. Stats. Ann. 37.117]. The court found defendant guilty and sentenced him to the county jail for a period of ninety days and he prosecutes this writ of error to reverse the judgment.

Defendant's principal contention is that the evidence was insufficient to prove his guilt beyond a reasonable doubt.

Between the hours of one and two o'clock a.m. on November 14, 1948, defendant and one Modest were visiting a tavern known as the Cotton Club in the Village of Summit, Illinois. Defendant left the tavern followed by Modest. Shortly thereafter, while they were standing outside the tavern, defendant fired a shot at Modest with a pistol. Two police officers witnessed the shooting. Officer Dyson testified that he had been in the tavern where he saw defendant and Modest; that when he came outside of the tavern he saw defendant fire at Modest; "I saw a pistol in Beason's hand. It was about that long." (Indicating.) Immediately after firing at Modest defendant ran toward his car but shortly returned to the scene of the shooting where the witness found a gun lying on the ground in full view beside Modest.

Officer Williams testified that he heard defendant and Modest arguing in the tavern early in the evening and asked them to "break it up"; that when defendant and Modest left the tavern the witness followed them.

As Officer Williams walked toward them he heard gun-fire and observed that defendant had ''a gun in his hand.'' After the shot was fired the witness searched defendant but did not find a gun. Defendant told the witness that the gun was on the floor of his automobile, whereupon the witness searched the automobile but did not find the gun. Defendant did not take the witness stand.

It is uncontroverted that the first time the police officers saw the pistol it was in full view in the hand of defendant and that immediately after the shooting it was lying alongside of Modest in open view of the officers.

In support of their position the People rely strongly on *People v. Malega,* 255 Ill. App. 474, and *People v. Saltis,* 328 Ill. 494. We think the facts in the cases last cited are readily distinguishable from the facts in this case. In the *Malega* case it appears that while walking on the public street early in the morning, defendant was observed by police officers taking some dark object out of his overcoat pocket and throwing it away. Short-ly thereafter defendant was arrested and searched to ascertain whether he carried any concealed weapon. The officers did not find a weapon on defendant but did find nearby three revolvers on the street. Defendant testified that he did not throw away any revolvers but that he threw an empty cigarette carton. There the court held that the finding of guilty was warranted by the evidence. In the *Saltis* case police officers testified that they entered a tavern where they searched several persons and found a revolver concealed on the person of defendant. Defendant denied that the revolver was taken from his person, as did several other witnesses. There was a sharp conflict in the evidence. The court held that it was sufficient to support the judgment.

In the instant case Officers Dyson and Williams saw defendant in the tavern before the shooting but neither

officer there searched defendant nor saw a gun on him. The evidence does not show where defendant got the gun. The trial court's finding that defendant was carrying a concealed weapon on his person rests on an inference drawn from the fact that defendant had a pistol in his hand outside of the tavern. Just when or where defendant had a gun concealed on his person does not appear from the evidence.

In *People v. Gregor,* 359 Ill. 402, where defendant was charged with the same offense as here, it appears that a police officer of Calumet City, Illinois, while responding to another call heard some pistol shots in that city. He saw an automobile belonging to defendant drive away. The police officer pursued the defendant to Hammond, Indiana, where he found him in the lobby of a hotel. Upon searching him the police found in defendant's coat pocket a pistol from which all the cartridges had been fired except one. Upon being questioned by the officer defendant admitted shooting at a building in Calumet City. The court said, at page 404: "Guilt is never presumed, and where conditions may be explained on a hypothesis of innocence it is the duty of the court to accept that explanation." Continuing, speaking of the concealment of the pistol, the court said: "It could not have been concealed at the moment the shots were fired, and whether it was in his pocket, either before or after the shooting, at any place in this State is entirely a guess . . . ."

██ The gist of the offense charged is not carrying of deadly weapons, but carrying them concealed on or about the person. In the recent case of *People v. Liss,* 406 Ill. 419, where the same statute was involved as here, the court said, at page 422: "It is not sufficient to come under this statute that a defendant be in possession of a deadly weapon, but the weapon must be concealed and readily available for use."

In the case at bar we think the People have failed to prove the offense charged beyond a reasonable doubt, and we are therefore impelled to reverse the judgment. The judgment of the criminal court is accordingly reversed.

*Judgment reversed.*

BURKE, P. J., and KILEY, J., concur.