24CA0710 Peo v Walker 07-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0710
City and County of Denver District Court No. 04CR3521
Honorable Karen L. Brody, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Tyrone Walker,

Defendant-Appellant.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE GOMEZ
Freyre and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

---

Philip J. Weiser, Attorney General, Wendy J. Ritz, First Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Tyrone Walker, Pro Se

¶ 1    Defendant, Tyrone Walker, appeals the postconviction court's order denying his Crim. P. 35(c) motion. We affirm.

## I.    Background

¶ 2    In 2004, Walker was charged by grand jury indictment with first degree murder and retaliation against a witness/victim based on allegations that he shot and killed David Smith while Smith was sleeping in a car parked in front of an apartment building.

¶ 3    At trial, the prosecution presented evidence that Smith had admitted to authorities that he and Walker participated in an attempted bank robbery, for which Walker was eventually convicted and sentenced to prison.[1]  In a pretrial hearing, the trial court permitted presentation of this evidence as res gestae because it "[went] to the retaliation against a witness and the motive for the alleged homicide."

¶ 4    An eyewitness, Denard Booker, testified that he initially didn't tell the police or the grand jury "everything" because he feared for his and his family's safety if he was identified as a "snitch."  He also testified that his car was "shot up" after Smith was killed.  Defense

---

[1] Walker was convicted of attempted aggravated robbery and sentenced to prison in Denver District Court Case No. 98CR181.

counsel objected to the discussion of the car, arguing that such testimony would implicate Walker in the incident. The trial court permitted the testimony, finding it was probative of Booker's "mental state in terms of his lying to the police or not being entirely truthful[] in coming forward with the information."

¶ 5    The jury convicted Walker as charged of first degree murder and retaliation against a witness/victim. He was sentenced to life in prison without the possibility of parole on the murder count and a consecutive twelve years in prison on the retaliation count.

¶ 6    Walker directly appealed his conviction. As relevant here, he argued that the evidence of shots fired at Booker's car was inadmissible under CRE 402, 403, and 404. *See People v. Walker*, slip op. at 20 (Colo. App. No. 05CA2648, Dec. 10, 2009) (not published pursuant to C.A.R. 35(f)). The division rejected that argument, as well as Walker's other arguments, and affirmed the conviction. *Id.* at 23-24, 50. The mandate was issued in 2010.

¶ 7    A few years later, Walker filed a pro se Crim. P. 35(c) motion, raising many claims. As relevant here, he asserted that trial counsel was ineffective for failing to contest the prosecution's use of his attempted aggravated robbery conviction under CRE 404(b).

The postconviction court issued an order denying the majority of Walker's claims. It specifically denied the ineffective assistance claim regarding the use of Walker's prior conviction because the trial court had admitted the evidence as res gestae: "Because the evidence was admissible as res gestae evidence, counsel could not have been ineffective for failing to object to the evidence . . . ." The court also determined that two claims regarding counsel's failure to interview and call witnesses warranted the appointment of counsel. Counsel for Walker filed a supplemental Crim. P. 35(c) motion, preserving all issues raised in the pro se motion and asserting additional claims.

¶ 8    The postconviction court denied Walker's motions without a hearing. Walker appealed but did not reassert his ineffective assistance claim regarding the use of his prior conviction. *See People v. Walker*, (Colo. App. No. 15CA1423, Dec. 6, 2018) (not published pursuant to C.A.R. 35(e)). A division of this court affirmed the order denying the motions. *Id.*

¶ 9    Then, in 2023, Walker filed the underlying pro se Crim. P. 35(c) motion. He asserted that the trial court abused its discretion by admitting (1) evidence related to his attempted robbery

3

conviction as res gestae evidence and (2) evidence that Booker's car was shot up. He argued that admission of the evidence without the application of CRE 404(b) and *People v. Spoto*, 795 P.2d 1314 (Colo. 1990), violated his rights to due process and a fair and impartial jury. He also argued that the evidence of his prior conviction was inadmissible as res gestae due to the supreme court's announcement of *Rojas v. People*, 2022 CO 8, which he asserted applied to him retroactively. He asserted that his CRE 404(b) claim regarding his attempted robbery conviction was not successive because, although he raised it in his previous postconviction motion, it was never resolved on the merits. He requested that his conviction be reversed or vacated as a result of the alleged errors.

¶ 10 The postconviction court denied Walker's motion without a hearing. The court concluded that, per the recent court of appeals decision in *People v. Cooper*, 2023 COA 113, *Rojas* didn't apply retroactively because it didn't implicate a constitutional rule. And because "a defendant cannot seek retroactive application of a significant nonconstitutional change in the law (such as elimination of the res gestae doctrine) once his conviction has become final" under section 18-1-410(1)(f)(II), C.R.S 2024, and Crim. P. 35(c)(1),

4

the court concluded that Walker could not seek retroactive application of *Rojas*. The court also concluded that all other issues raised by Walker were successive.

## II.  Discussion

¶ 11    Walker contends that the postconviction court erred by denying his motion. Specifically, he contends that the court erroneously (1) relied on *Cooper*; (2) concluded that *Rojas* established a new nonconstitutional rule of law and, thus, that section 18-1-410(1)(f)(II) and Crim. P. 35(c)(1) don't apply to him; and (3) denied his CRE 404(b) claim regarding his prior conviction as successive.[2] We disagree with Walker's contentions.

### A.  Standard of Review

¶ 12    We review de novo the denial of a Crim. P. 35(c) motion without an evidentiary hearing. *People v. Cali*, 2020 CO 20, ¶ 14.

### B.  The Postconviction Court's Reliance on *Cooper*

¶ 13    We first consider — and reject — Walker's arguments concerning the postconviction court's reliance on *Cooper*.

---

[2] Walker has abandoned his claim that the trial court abused its discretion by admitting evidence of the shooting of Booker's car under CRE 404(b) by not reasserting it on appeal. *See People v. Hunsaker*, 2020 COA 48, ¶ 10, *aff'd*, 2021 CO 83.

¶ 14    "Res gestae is a theory of relevance which recognizes that certain evidence is relevant because of its unique relationship to the charged crime." *People v. Greenlee*, 200 P.3d 363, 368 (Colo. 2009), *abrogated by Rojas*.

¶ 15    In *Rojas*, our supreme court abolished res gestae in criminal cases. *Rojas*, ¶¶ 4, 36-41; *see also Cooper*, ¶ 10. It reasoned, in part, that res gestae was "incompatible with the modern Rules [of Evidence]." *Rojas*, ¶ 40. "In [res gestae's] place, the supreme court adopted an intrinsic-extrinsic framework to determine whether the admission of uncharged misconduct evidence must be analyzed under CRE 404(b)." *Cooper*, ¶ 10; *see also Rojas*, ¶¶ 44, 52.

¶ 16    In *Cooper*, a division of this court determined that, although "*Rojas* announced a new rule abolishing res gestae as a theory of relevance in criminal cases," it "did not implicate a constitutional rule" and therefore did not apply retroactively to cases on collateral review under *Teague v. Lane*, 489 U.S. 288 (1989). *Cooper*, ¶¶ 3,

6

11-14.[3]  The division reasoned that *Teague* applies only to new constitutional rules, which are founded on constitutional concerns, and the erroneous admission of CRE 404(b) evidence is not constitutional error.  *Id.* at ¶¶ 9-10.

¶ 17    Relying on *Cooper*, the postconviction court here determined that *Rojas* didn't implicate a constitutional rule and therefore didn't apply retroactively to Walker's conviction.  We conclude that this was proper.

¶ 18    First, "the trial judge is bound to follow the decisions of the appellate courts and cannot generally be faulted for not departing from that authority sua sponte."  *Scott v. People*, 2017 CO 16, ¶ 17, *abrogated on other grounds by Whiteaker v. People*, 2024 CO 25, ¶ 25.  Therefore, the postconviction court properly followed *Cooper*.

---

[3] Colorado has adopted the test established in *Teague v. Lane*, 489 U.S. 288 (1989), to determine whether a new constitutional rule of criminal procedure applies retroactively to cases on collateral review.  *Edwards v. People*, 129 P.3d 977, 983 (Colo. 2006).  Under this test, courts examine "(1) whether the defendant's conviction is final; (2) whether the rule in question is in fact new; and (3) if the rule is new, whether it meets either of the two *Teague* exceptions to the general bar on retroactivity."  *Id.*  The two exceptions are that "the rule is (1) substantive (rather than procedural) or (2) a 'watershed' rule of criminal procedure."  *McDonald v. People*, 2024 CO 75, ¶ 16 (citing *Teague*, 489 U.S. at 308-11).

¶ 19     Second, we agree with the reasoning in *Cooper* and decline to depart from it. *See Chavez v. Chavez*, 2020 COA 70, ¶ 13 (A division "may defer to the determination of another division . . . ."). Indeed, the erroneous admission of CRE 404(b) evidence is not constitutional error. *Yusem v. People*, 210 P.3d 458, 469 n.16 (Colo. 2009). Therefore, the supreme court's decision in *Rojas* to adopt an intrinsic-extrinsic framework under CRE 404(b) in lieu of res gestae did not implicate a constitutional rule. And *Rojas* does not apply retroactively under *Teague* because *Teague* applies only to "new constitutional rules of criminal procedure." *Danforth v. Minnesota*, 552 U.S. 264, 274 (2008).

¶ 20     Walker argues that we should "take a second look" at *Cooper* or, alternatively, "send" it to the Colorado Supreme Court for review. However, we agree with the outcome in *Cooper*. And Cooper's petition for writ of certiorari has already been denied by the supreme court. *See Cooper v. People*, (Colo. No. 24SC25, Sept. 3, 2024) (unpublished order).

¶ 21     Walker also argues that the postconviction court erred by relying on *Cooper* because the "*Cooper* Court never actually

determined whether the *Rojas* Opinion established a new rule of law." Specifically, Walker asserts that

> the Court [did] not explain how, or by what reason, rationale, legal principle, authority or precedent it followed in reaching its decision that *Rojas* announced a new rule of law. . . . In other words, the *Cooper* Court's determination that the *Rojas* Opinion announced a new rule of law, is unsubstantiated.

¶ 22 We disagree. The division in *Cooper* expressly stated that "*Rojas* announced a new rule abolishing res gestae as a theory of relevance in criminal cases." *Cooper,* ¶ 3. Implicit in this statement is the fact that when a common law doctrine is abolished, that constitutes a change in the law, as the common law is developed and maintained through judicial precedent. Contrary to Walker's assertions, the division wasn't required to delve into whether the abolishment of a common law doctrine constitutes a change in law; it's self-evident that it does.

¶ 23 For these reasons, we conclude that the postconviction court didn't err by relying on *Cooper* to deny Walker's motion.

9

C.     Application of Section 18-1-410(1)(f)(II) and Crim. P. 35(c)(1)

¶ 24     Walker next asserts that the postconviction court erred by denying his motion under section 18-1-410(1)(f)(II) and Crim. P. 35(c)(1), which prohibit the application of significant changes in the law to final convictions, because *Rojas* "did not and does not create a significant change in the law." We disagree.

¶ 25     Relying on *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298 (1994), and *Bousley v. United States*, 523 U.S. 614 (1998), he argues that, instead, *Rojas* merely explained that the doctrine of res gestae became obsolete once Colorado adopted the modern Rules of Evidence in 1980. He quotes language from the majority in *Rivers* and the partial concurrence and partial dissent in *Bousley* in which the U.S. Supreme Court stated that, in interpreting federal statutes, two prior Supreme Court decisions didn't change the law but rather explained what the statutes had meant since their enactment. *See Rivers*, 511 U.S. at 313 n.12 ("[I]t is not accurate to say that the Court's decision in [*Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)] 'changed' the law that previously prevailed in the Sixth Circuit when this case was filed. Rather, given the structure of our judicial system, the *Patterson* opinion finally decided what [42

10

U.S.C.] § 1981 had *always* meant and explained why the Courts of Appeals had misinterpreted the will of the enacting Congress."); *Bousley*, 523 U.S. at 625 ("This case does not raise any question concerning the possible retroactive application of a new rule of law because our decision in [*Bailey v. United States*, 516 U.S. 137 (1995)] did not change the law. It merely explained what [18 U.S.C.] § 924(c) had meant ever since the statute was enacted." (Stevens, J., concurring in part and dissenting in part) (citations omitted)).

¶ 26    However, we agree with *Cooper* that "*Rojas* announced a new rule abolishing res gestae as a theory of relevance in criminal cases," even if it wasn't a new rule of constitutional law. *Cooper*, ¶ 3. *Rojas* didn't merely explain that res gestae was in fact abolished when the modern Rules of Evidence were enacted in 1980. The res gestae common law doctrine was in effect in Colorado "since at least the 1870s" until the announcement of *Rojas*. *Rojas*, ¶ 18. And as we explained, the abolishment of a common law doctrine inherently constitutes a change in the law.

¶ 27    "[S]ection 18-1-410(1)(f)(II) and Rule 35(c)(1) bar any postconviction claims seeking retroactive application of a significant nonconstitutional change in the law once the conviction has

11

become final." *Cooper*, ¶ 14; *see also Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final . . . ."). Therefore, when the mandate was issued in 2010, Walker lost his ability to seek retroactive application of "significant nonconstitutional change[s] in the law," like that announced in *Rojas. Cooper*, ¶ 14. Accordingly, the postconviction court properly applied section 18-1-410(1)(f)(II) and Crim. P. 35(c)(1) to deny Walker's motion.

### D. Walker's CRE 404(b) Claim Is Successive

¶ 28 Finally, Walker contends that the postconviction court erred by denying his CRE 404(b) claim regarding his attempted robbery conviction as successive because, though he previously raised the claim, it has never been decided on the merits. Again, we disagree.

¶ 29 Crim. P. 35(c)(3)(VI) and (VII) require a court to deny any claims as successive that were raised and resolved in, or could have been raised in, a prior appeal or postconviction proceeding. The language of the rule "is mandatory rather than permissive." *People v. Taylor*, 2018 COA 175, ¶ 17.

12

¶ 30     In Walker's first pro se Crim. P. 35(c) motion, he asserted that trial counsel was ineffective for failing to contest the prosecution's use of his attempted aggravated robbery conviction under CRE 404(b).  To the extent that the claim he raised in the underlying motion is the same as that claim, the claim is successive because, despite his contention, the claim has been resolved on the merits. In denying the claim, the postconviction court determined that counsel could not have been ineffective because the evidence was admitted under the res gestae doctrine.  And Walker failed to reassert this claim in his appeal of that order, thereby abandoning it.  *See People v. Hunsaker*, 2020 COA 48, ¶ 10, *aff'd*, 2021 CO 83.

¶ 31     To the extent that Walker raised this claim for the first time in the underlying motion, it is also successive because he could have raised it on direct appeal or in his first Crim. P. 35(c) motion.

¶ 32     Therefore, the postconviction court didn't err by denying this claim as successive.

### III.   Disposition

¶ 33     The order is affirmed.

JUDGE FREYRE and JUDGE MEIRINK concur.